UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **MICHAEL A. SUSANOWIZ, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CAUSE NO. 1:10-cv-26 |
| ) | |
| **TOWN OF HAMILTON,** ) | |
| **HAMILTON POLICE DEPARTMENT, and** ) | |
| **OFFICER FRANK BALDWIN,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION and ORDER

### I. INTRODUCTION

Plaintiff Michael Susanowiz, Jr. ("Susanowiz") is suing the Town of Hamilton, Indiana (the "Town"), the Hamilton Police Department (the "Department"), and Hamilton Police Officer Frank Baldwin ("Baldwin"), under 42 U.S.C. § 1983 for use of excessive force and under a state law theory of battery.[1] Susanowiz's claims stem from events that occurred during his arrest on September 21, 2008—in particular, Baldwin's use of a "take down" maneuver to forcibly bring Susanowiz to the ground after he had been handcuffed. Susanowiz claims that he was not resisting Baldwin and that as a result of Baldwin's use of force, he sustained severe injuries to his left ankle.

Now before the Court is the Defendants' motion for summary judgment. To begin, the Department argues that it is not a legal entity subject to suit and is entitled to summary judgment on both claims. Next, Baldwin argues that his use of force against Susanowiz was objectively

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

reasonable and was not excessive as a matter of law. He further maintains that he is entitled to qualified immunity on the excessive force claim. For its part, the Town asserts that summary judgment must be granted on the excessive force claim because Susanowiz has not alleged that his constitutional deprivation was the result of an official custom or policy. Baldwin and the Town both claim that the Indiana Tort Claims Act ("ITCA") immunizes them against Susanowiz's state law battery claim.

Susanowiz does not address the Department's argument and apparently concedes that summary judgment can be granted in its favor on both counts. Susanowiz does, however, respond that a genuine issue of material fact exists concerning both claims against Baldwin and that he is not entitled to immunity under federal or state law. Susanowiz also maintains that summary judgment cannot be granted in favor of the Town on the state law battery claim, but apparently concedes that it cannot be liable on the excessive force claim.

For the reasons provided in this Opinion and Order, the Defendants' motion for summary judgment will be GRANTED IN PART and DENIED IN PART.

## II. FACTUAL BACKGROUND

All of the events giving rise to this case were captured by the dashboard camera in Baldwin's squad car. The Supreme Court recently recognized that if events are recorded on a police officer's dashboard camera, the court is not necessarily obligated to take the non-moving party's version of the facts as true. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). *See also Thomas v. Durastanti*, 607 F.3d

2

655, 659 (10th Cir. 2010) (continuing to view facts in light most favorable to non-moving party where they were not contradicted by video recording); *cf. Paige v. City of Fort Wayne*, No. 1:09-cv-143, 2010 WL 3522526, at *4-9 (N.D. Ind. Sept. 2, 2010) (granting summary judgment where video recording largely contradicted plaintiff's version of events). Here, by contrast, the dashboard camera does not "blatantly contradict" Susanowiz's story, *Scott*, 550 U.S. at 380, and, accordingly, the facts are recited in the light most favorable to him, the non-moving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

On the evening of September 21, 2008, Baldwin responded to a report of a fight taking place at the Pier 32 restaurant and bar in Hamilton, Indiana. As he arrived on the scene, a restaurant employee directed Baldwin to a silver vehicle in the parking lot. As Officer Baldwin pulled up to the silver vehicle, it noticeably rolled backwards and an individual (Susanowiz) exited the drivers side of the vehicle.

Susanowiz was slurring his speech and was unsteady on his feet. Indeed, he does not dispute that he was heavily intoxicated. Baldwin instructed Susanowiz several times to get back in his vehicle. Susanowiz complied and Baldwin can be heard calling in the car's license plate. After running Susanowiz's license plate, Baldwin verbally commanded Susanowiz out of his vehicle and ordered him to step over to the squad car.[2] Susanowiz did so and Baldwin began to question Susanowiz about what took place inside the restaurant. Susanowiz denied that a fight had occured. During the conversation, Baldwin can frequently be heard telling Susanowiz to keep his hands on the hood of the squad car. Baldwin then patted down Susanowiz and did not

---

[2] At this point, the parties move off camera and are no longer visible, but their conversation remains audible.

find any weapons. Susanowiz eventually admitted that he had a "disagreement" with some of the waiters at Pier 32, but denied that a fight occurred.

At this point, the parties' accounts diverge. Baldwin characterizes Susanowiz's behavior prior to being handcuffed as "argumentative" and "uncooperative." (Baldwin Dep. 36:22-24; 37:5-6.) He argues that "Susanowiz repeatedly made gestures which [Baldwin] deemed threatening." (Defs.' Br. in Support 4.) Susanowiz responds that although he was somewhat uncooperative due to his intoxication, he never threatened Baldwin or displayed a belligerent attitude prior to being handcuffed.

Approximately twelve minutes into their encounter, Baldwin told Susanowiz to step in front of the squad car and put his hands behind his back.[3] Susanowiz complied and Baldwin handcuffed Susanowiz while informing him that he was doing so for officer safety and on suspicion of public intoxication. Susanowiz did not resist Baldwin's efforts to place him in custody.

Shortly thereafter, Susanowiz asked, "Am I arrested?" and Baldwin replied, "Right now yes, you are arrested for public intox." Susanowiz then asked Baldwin, "What's that called? . . . What's that? What's that? . . . I'm asking . . . I'm asking one more time." Baldwin returned to his squad car and responded: "I'm asking the questions, alright, and right now I don't like your tone. So you can just shut up and just stand there."

Following this remark by Baldwin, Susanowiz began to display a belligerent attitude. He retorted, "don't tell me to shut up dude," and "you tell me to shut up again." Baldwin can be heard speaking with the dispatcher as Susanowiz told him, "you're a joke fella, you're a fucking

---

[3] As Baldwin and Susanowiz move to the front of the squad car, they are again visible on camera.

joke." Baldwin said, "that's good, keep running your mouth," and Susanowiz replied, "fuck you." After Baldwin told the dispatcher he had arrested Susanowiz on suspicion of public intoxication, Susanowiz demanded to speak with his sergeant and called out, "fuck you, dog, you ain't shit."

Baldwin then left the squad car, apparently slamming the car door as he exited, and walked towards Susanowiz, who continued to insult him. Baldwin states that he planned to place Susanowiz in his car until other officers arrived. As Baldwin approached him Susanowiz exclaimed, "yeah I got the cuffs on me." Baldwin claims that as he reached for the handcuffs, "Susanowiz abruptly swung around on [him] in a threatening manner." Because he was allegedly resisting, and in an effort to gain control of him, Baldwin forcefully brought Susanowiz to the ground.[4]

Susanowiz, however, claims that as Baldwin approached him, he merely turned his head and body somewhat to look at him. He maintains that the dashboard video clearly shows that he did not try to "swing around" on Baldwin in a "threatening manner." Rather, Susanowiz alleges that Baldwin lost his temper and decided to "shut him up". (Pl.'s Br. in Opp'n 2.)

Once Baldwin was on top of Susanowiz on the ground, he told him, "[are] you going to listen to me now?" and told him to "knock it off . . . knock your shit off." Shortly thereafter, Susanowiz started to complain that his ankle was broken. The paramedics eventually arrived to treat Susanowiz and transported him to the hospital. Following his treatment, Susanowiz was taken to the Steuben County jail.

On January 25, 2010, Susanowiz filed suit against the Defendants, alleging that

---

[4] As discussed more fully, *infra*, the Court concludes, after repeated viewing, that the video is inconclusive concerning whether Susanowiz was resisting Baldwin.

5

Baldwin's actions during the arrest constitute use of excessive force and battery.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

### IV. ANALYSIS

*A. The Department Is Entitled to Summary Judgment on Both Claims*

"Municipalities are subject to suit for constitutional violations pursuant to 42 U.S.C. § 1983." *Martin v. Teusch*, No. 1:09-CV-321 JVB, 2010 WL 1474525, at *2 (N.D. Ind. Apr. 9, 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "However, a city's police department is not a suable entity apart from the municipality." *Id.*; *see West v. Waymire*, 114 F.3d 464, 646-47 (7th Cir. 1997) (articulating that Indiana municipal police departments

lack the capacity to be sued); *McAllister v. Town of Burns Harbor*, 693 F. Supp. 2d 815, 822 n.2 (N.D. Ind. 2010) (same); *Vela v. Indianapolis Police Dept.*, No. 1:06-cv-1481-SEB-JMS, 2008 WL 191977, at *4 (S.D. Ind. Jan. 22, 2008) (collecting cases); *Culbreath v. Florea*, No. 3:06-CV-0749 WL, 2007 WL 433075, at *2 (N.D. Ind. Feb. 5, 2007) ("[U]nder Indiana law, a 'police department' has no separate corporate existence and is therefore not a suable entity.").

In his Response, Susanowiz does not dispute that the Department is not a suable entity and apparently concedes that the Department is entitled to summary judgment on both claims. Accordingly, the Defendants' motion is granted with respect to all claims against the Hamilton Police Department.

### B. *The Excessive Force Claim Against Baldwin Survives Summary Judgment*

A claim of "excessive force . . . in the course of an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard. . . ." *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also Scott*, 550 U.S. at 381. This analysis gives rise to the overarching question, "whether [the officer's] actions were objectively reasonable." *Scott,* 550 U.S. at 381. Answering this question "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

At bottom then, the inquiry focuses on whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting [him]." *Id*. at 397. This means that the Court must view the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Consequently, a "police officer's use

of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne*, 337 F.3d at 778 (citation and internal quotation marks omitted); *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (stating that the court must look to whether the totality of the circumstances justified the seizure).

Baldwin claims that the video recording of the incident unambiguously shows that Susanowiz resisted him and tried to "swing around" against him in a threatening manner. Because of Susanowiz's alleged resistance, Baldwin claims his actions were objectively reasonable and do not constitute excessive force.

Baldwin, however, overstates the persuasiveness of the video recording. Even after repeated viewing—including once in slow motion—the precise chain of events that led to the use of force is not readily apparent. It is evident that Susanowiz was handcuffed and standing still as Baldwin approached and reached behind him. In the next few seconds, however, events happen so quickly that it is unclear who acted and who reacted. Under one plausible viewing, Susanowiz preemptively jerks his body towards Baldwin, which in turn prompts Baldwin to take him to the ground. On the other hand, because it appears that Baldwin already had his hands on Susanowiz (allegedly to move him to the squad car) *before* Susanowiz jerks towards Baldwin, Susanowiz's body movements may, in fact, be involuntary (or reactionary) as Baldwin jerks him to the ground.

Because Susanowiz's claim that he was not resisting Baldwin is not "blatantly contradict[ed] by the [video recording]", *Scott*, 550 U.S. at 380, the Court must construe the record in his favor. *Payne*, 337 F.3d at 770. Once Susanowiz's version is accepted as true, "it is

8

difficult to conceive of a reasonable explanation for [Baldwin's] conduct, and a jury could readily conclude that [Baldwin] used excessive force in [taking Susanowiz to the ground.]" *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 686 (7th Cir. 2007). Indeed, "a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders." *Hayes v. City of Indianapolis*, No. 1:08-cv-006-DFH-JMS, 2009 WL 700232, at *4 (S.D. Ind. Mar. 16, 2009) (collecting cases). "Even 'one violent push and poke' will constitute excessive force when there is no provocation." *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1120 (N.D. Ill. 1997) (quoting *Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 475-76 (7th Cir. 1997)); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) ("[P]olice officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."); *Norris v. Bain*, No. 1:04-CV-1545, 2006 WL 753131, at *14 (S.D. Ind. Mar. 21, 2006) ("[It is] well established that the use of force unnecessary for an arrest, particularly where force is applied to a suspect who is not fleeing or resisting, and who has been overcome, cannot be considered constitutionally reasonable."); *Hill v. Miller*, 878 F. Supp. 114, 116 (N.D. Ill. 1995) ("[T]he use of any significant force . . . not reasonably necessary to effect an arrest—as where . . . the force is used after a suspect's resistance has been overcome or his flight thwarted—would be constitutionally unreasonable.").

Of course, the Supreme Court has instructed that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Payne*, 337 F.3d at 779 (quoting *Graham*, 490 U.S. at 396-97). Nevertheless, even given this flexibility, Baldwin's force in taking

9

Susanowiz to the ground—after he had been handcuffed, peacefully placed under arrest for a relatively minor offense, and was allegedly not resisting—was not objectively reasonable if the jury accepts Susanowiz's version of the story. *See id.*; *cf. Duran v. Sirgedas*, 240 F. App'x 104 (7th Cir. 2007) (unpublished) (finding no excessive force where officer hit plaintiff in the head with his fist to subdue him and plaintiff admitted to resisting arrest by, among other things, biting and struggling with the officers). Therefore, Baldwin's motion for summary judgment on the basis that the force he used was reasonable under the circumstances must be denied.

Furthermore, Baldwin is not entitled to qualified immunity. "The doctrine of qualified immunity shields from liability public officials who perform discretionary duties." *Chelios v. Heavener*, 520 F.3d 678, 690-91 (7th Cir. 2008). "Qualified immunity shields from liability police officers 'who act in ways they reasonably believe to be lawful.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). A two-part test is applied to determine whether the doctrine attaches: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (citing *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)). A plaintiff may defeat a qualified immunity defense by showing that "the conduct at issue is so egregious that no reasonable person could have believed that it would not violate clearly established rights."[5] *Wheeler*, 539 F.3d at 639; *see also Smith*, 242 F.3d at 742; *Saffell v. Crews*, 183 F.3d 655, 658

---

[5] The Seventh Circuit has recognized that the excessive force standard is "well settled and, since it is already an objective standard based on a reasonable police officer, qualified immunity normally will not apply." *DuFour-Dowell*, 969 F. Supp. at 1120-21 (citing *Lanigan*, 110 F.3d at 476-77). "However, the Seventh Circuit has left open the possibility that the applicable law may be sufficiently unsettled to justify application of the defense in a particular case." *Id.* (citing *Lanigan*, 110 F.3d at 477).

(7th Cir. 1999).

At the time of Susanowiz's arrest, "it was of course clearly established that a police officer may not use excessive force in arresting an individual." *Holmes*, 511 F.3d at 687; *see Norris*, 2006 WL 753131, at *14 ("[T]he Seventh Circuit [has] made clear that police officers do not have the right to inflict 'wholly gratuitous' force on a subdued suspect who was not resisting arrest." (citing *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996))). Accepting as true Susanowiz's contention that he did not offer any physical resistance, Baldwin could not have reasonably thought that the allegedly gratuitous force he employed against Susanowiz was justified. *See Holmes*, 511 F.3d at 687. That is, no reasonable officer could have thought that it was permissible to perform a "take down" against an unresisting arrestee who had already been placed in handcuffs. *See id*. (citing *Payne*, 337 F.3d at 780); *Hayes*, 2009 WL 700232, at *4 ("It has long been well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders.") (collecting cases).

Therefore, on this record, Baldwin is not entitled to qualified immunity. *See White v. Gerardot*, No. 1:05-cv-382, 2007 WL 541819, at *7 (N.D. Ind. Feb. 15, 2007) ("[W]hen factual disputes surrounding the conduct at issue bear directly upon whether it was objectively reasonable for [the officer] to believe he acted in compliance with clearly established law, then summary judgment on the issue of qualified immunity must be denied." (internal quotation marks and citations omitted)). Accordingly, Baldwin is not entitled to summary judgment on Susanowiz's excessive force claim.

## C. The § 1983 Claim Against the Town Will Be Dismissed on Summary Judgment

To recover against the Town under § 1983, Susanowiz must demonstrate that a municipal policy or custom caused the alleged deprivation of his constitutional rights. *See Rasche v. Vill. of Beecher*, 336 F.3d 588, 597 (7th Cir. 2003); *Monell*, 436 U.S. at 690. More particularly, he must show that: "(1) [he] suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the [municipality]; which (3) was the proximate cause of his injury." *Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002); *see also Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009). "Unless there is an unconstitutional policy, there cannot be official-capacity liability; only individual-capacity liability is possible." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007).

Susanowiz does not allege that the Town has a municipal policy or custom concerning the use of force by police officers that was the proximate cause of his injury. Indeed, Susanowiz does not address the Town's argument on this point and apparently concedes that summary judgment is proper. Accordingly, the Defendants' Motion is granted with respect to the § 1983 excessive force claim against the Town.

## D. The State Law Battery Claim Against Baldwin and the Town Survives Summary Judgment

Susanowiz also asserts a state law tort claim of battery against all the Defendants for his injuries resulting from Baldwin's alleged use of excessive force. Ultimately, this claim survives summary judgment as against Baldwin and the Town.[6]

The elements of civil battery are well established. "An actor is subject to liability to

---

[6] As discussed in Section A, the Department is entitled to summary judgment on both claims.

another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007) (citing RESTATEMENT (SECOND) OF TORTS § 13 (1965)). Accordingly, Baldwin and the Town are liable for a simple battery if Baldwin "intentionally causes bodily contact to the plaintiff in a way not justified by the plaintiff's apparent wishes or by a privilege, and the contact is in fact harmful or against the plaintiff's will." 1 D.B. DOBBS, THE LAW OF TORTS § 28 at 52-53 (2001).

On this record, it can certainly be inferred that Baldwin was acting with the knowledge that his use of force against Susanowiz was inconsistent with Susanowiz's wishes; that is, "offensive," given that Susanowiz claims that he was already handcuffed, not resisting arrest, and posed no threat to Baldwin. *Id.* § 29 at 55 ("[A] touching is 'offensive' if it infringes upon the plaintiff's actual and apparent wishes to avoid it."); *see also Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877, 914 (S.D. Ind. 2009) ("Even a slight touching without consent can be the basis of a battery action.")

In response, Baldwin and the Town argue that they cannot be liable for battery because the ITCA immunizes police officers and their employers when the officers are acting in the scope of their employment and the injury results from the "enforcement . . . of a law." Ind. Code § 34-13-3-3(8). However, "[u]nder Indiana law, a police officer may use only the force that is reasonable and necessary for effecting an arrest." *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 866 (S.D. Ind. 2006) (citing Ind. Code § 35-41-3-3(b)). Consequently, "[i]f a police officer uses unnecessary or excessive force, the officer may commit the torts of assault and battery." *Id.*

13

(citing *Crawford v. City of Muncie*, 655 N.E.2d 614, 622 (Ind. Ct. App. 1995); *City of South Bend v. Fleming*, 397 N.E.2d 1075, 1077 (Ind. Ct. App. 1979)); *see also Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877, 914 (S.D. Ind. 2009). "Indiana's excessive force standard effectively parallels the federal standard . . . ." *Fidler*, 428 F. Supp. 2d at 866 (citing *O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. Ct. App. 2000)).

Furthermore, excessive force claims fall outside the scope of law enforcement immunity under Indiana law. *Lessley*, 654 F. Supp. 2d at 913; *Elliott v. Sheriff of Rush Cnty., Ind.*, 686 F. Supp. 2d 840, 868 (S.D. Ind. 2010); *Wilson v. Isaacs*, 929 N.E.2d 200, 203-04 (Ind. 2010) (concluding that the law enforcement immunity of the ITCA does not shield the government from liability for excessive force by police). Consequently, the statutory law enforcement immunity does not shield Baldwin or the Town from Susanowiz's battery claim. *Lessley*, 654 F. Supp. 2d at 913; *Elliott,* 686 F. Supp. 2d at 868; *Wilson*, 929 N.E.2d at 203-04.

Although it appears to be undisputed that Baldwin was acting in the scope of his employment and thus that the Town should be the sole defendant on the state law claim under *respondeat superior*, the Defendants do not assert or argue this ramification of the ITCA. *See* Ind. Code § 34-13-3-5(b) ("A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally."); *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind. Ct. App. 1999) ("Under the doctrine of respondeat superior, an employer is liable for the acts of its employees which were committed within the course and scope of their employment."). As a result, at this juncture both Baldwin and the Town will remain as defendants to the state law battery claim.

At the end of the day, "[t]he same genuine issues of material fact that prevent this [C]ourt

14

from granting summary judgment on [Susanowiz's] § 1983 claims therefore also preclude summary judgment on [his] state law claim . . . ." *Fidler*, 428 F. Supp. 2d at 866. Consequently, the motion for summary judgment is denied with respect to Susanowiz's state law battery claim against Baldwin and the Town.

## V. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment (Docket # 19) is GRANTED IN PART and DENIED IN PART, in that only the following claims survive: (1) the § 1983 excessive force claim against Baldwin; and (2) the state law battery claim against Baldwin and the Town of Hamilton.

SO ORDERED.

Enter for this 10th day of January, 2011.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge